UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

14 CV 561

| | |
|---|---|
| CROSS MEDIAWORKS, LLC., a Delaware Corporation, and TELAMERICA MEDIA, LLC, a Delaware limited liability company,<br><br>Plaintiffs,<br><br>-against-<br><br>EMT HOLDINGS, LLC d/b/a EMEDIA TRADE, a Georgia limited liability company, and EMT & S (a.k.a. Electronic Media Trading & Services, Inc.), a Nevada corporation,<br><br>Defendants. | CASE NO. _____<br><br><br><br>**COMPLAINT**<br><br>JURY TRIAL DEMAND  |

Andrews Kurth LLP
450 Lexington Avenue
New York, New York 10010
(212) 850-2881

Brownstein Hyatt Farber Schreck, LLP
410 Seventeenth Street, Suite 2200
Denver, Colorado 80202-4432
(303) 223-1100

*Attorneys for Plaintiffs Cross MediaWorks, LLC
and TelAmerica Media, LLC*

-1-

NYC:256995.1

For their complaint against Defendants EMT Holdings, LLC d/b/a EMedia Trade and EMT&S, Inc. a.k.a. Electronic Media Trading & Services, Inc., Plaintiffs Cross MediaWorks, LLC and TelAmerica Media, LLC allege as follows:

## NATURE OF CASE

Plaintiffs bring this action for breach of contract, breach of the implied covenant of good faith and fair dealing, fraud, and declaratory judgment to recover monetary damages, punitive damages and bring Defendants' unfounded demands for money to an end. Plaintiff Cross MediaWorks, LLC ("CMW") is a leading provider of technology-enabled advertising solutions, primarily for unused television inventory, valued by leading advertisers, agencies and inventory owners. CMW, through its principal subsidiary TelAmerica Media, LLC ("TelAmerica") (collectively with CMW, "Plaintiffs"), has established a unique position within the television advertising sales ecosystem by providing a platform that electronically aggregates local unused cable television advertising inventory into a national footprint that reaches approximately 95 million households. CMW's "unwired network" offers a cost effective alternative or supplement to CMW's advertiser and advertising agency partners that traditionally use broadcast and cable networks (e.g., ABC, ESPN, Discovery Channel, etc.) to reach a national audience. Performing over 750 million advertising insertions per year, Plaintiffs are the preeminent player in monetizing otherwise unutilized local inventory based in significant part on CMW's one of a kind proprietary software and its best-in-class systems.

Over the past several years, Plaintiffs contracted with Defendants EMT Holdings, LLC d/b/a EMedia Trade ("EMedia") and EMT&S, Inc. a.k.a. Electronic Media Trading & Services, Inc. ("EMT&S", collectively with EMedia "Defendants") to provide certain software development services and related services as a modification to TelAmerica's proprietary

software system (Defendants' "Add-on Software") and to provide project management, software development and support services to CMW ("Project Management Services").[1] The Add-on Software and Project Management Services were provided by Defendants pursuant to several written and oral contracts. Specifically, Defendants' Add-on Software was integrated into and with the Project Management Services related to various custom business software products that Plaintiffs provided to its customers, including, but not limited to, products known as "$C^3$", "Maestro" and "Cross Media Ware" (collectively "Plaintiffs' Software").

The parties' contractual relationships would have ended far sooner had Plaintiffs discovered that Defendants were actively fraudulently inducing Plaintiffs to continue the Project Management Services by intentionally misleading Plaintiffs regarding Defendants' performance of the work and their ability to meet agreed upon deadlines for completion of the work. Based on Defendants' misrepresentations and other deceptive acts, Plaintiffs continued the contractual relationships and paid Defendants in full for the development and provision of the Add-on Software and the Project Management Services that were either never delivered on time, done incorrectly, or never delivered at all.

After the parties' relationship deteriorated as a result of Plaintiff's discovery of Defendants' fraud and Defendants' failure to properly perform the Project Management Services, Defendants attempted to extract further monies out of Plaintiffs for work that was either never done, not requested, or performed inadequately. Indeed, through a variety of unfounded demands, Defendants now assert that they are owed significant amounts of money and have lodged numerous threats of litigation. Plaintiffs bring this lawsuit seeking damages for Defendants' non-performance and fraud and a Court order that no money is owed to Defendants.

---

[1] Defendants also provided services to TelAmerica Media, Inc. the predecessor in interest to TelAmerica LLC. TelAmerica Media LLC. purchased the assets of TelAmerica Media, Inc. including the rights to agreements with Defendants entered into prior to 2009.

## JURISDICTION AND VENUE

1. This Court has subject matter jurisdiction over this case pursuant to 28 U.S.C. § 1332 as a civil action between citizens of different states where the amount in controversy exceeds the sum or value of $75,000.00.

2. This Court has personal jurisdiction over EMedia and EMT&S as they have engaged in transactions and occurrences within the Southern District of New York including (i) entering into the contracts at issue in this case with Plaintiffs in this jurisdiction, (ii) performing the contracts and providing services in this jurisdiction to Plaintiffs, (iii) purposefully availing themselves of New York law to govern their contracts with Plaintiffs, (iv) making fraudulent and misleading statements in New York and to persons located in this jurisdiction, and (v) knowingly and intentionally causing injury to persons in this jurisdiction.

3. Venue is proper in the United States District Court for the Southern District of New York under 28 U.S.C. § 1391(a)(2) and (3).

## PARTIES

4. Plaintiff, Cross MediaWorks, LLC ("CMW") is a Delaware limited liability company with its principal place of business located at 499 7th Avenue, 6th Floor, New York, New York 10018.

5. Plaintiff, TelAmerica Media, LLC ("TelAmerica") is a Delaware limited liability company with a principal place of business located at 499 7th Avenue, 6th Floor, New York, New York 10018.

6. Defendant EMT Holdings, LLC d/b/a EMedia Trade ("EMedia") is a Georgia limited liability company with a principal place of business located at 11800 Wills Road, Suite 150, Alpharetta, GA 30009.

7.	Defendant EMT&S, Inc. a.k.a. Electronic Media Trading & Services, Inc. ("EMT&S") is a Nevada corporation with a principal place of business located at 11800 Wills Road, Suite 150, Alpharetta, GA 30009.

## GENERAL ALLEGATIONS

The Software Agreements

8.	Plaintiffs and Defendants entered into several written and oral contracts related to the Add-on Software (collectively, the "Software Agreements") including, but not limited to: the Software Development and Licensing Agreement Between TelAmerica Media Inc. and EMT&S dated 2003; the Addendum to Software Development and Licensing Agreement By and Between EMT&S and TelAmerica Media Inc., dated July 29, 2005; the Software Development and Licensing Agreement Between TelAmerica Media Inc. and EMT&S dated February 2007[2]; and the Purchase and Sale of Software and License Agreement between EMT&S and CMW, dated March 2, 2010 (the "2010 Agreement").

9.	Pursuant to the Software Agreements, through the term of the parties' relationship, Defendants assisted in the development and provided the Add-on Software to Plaintiffs. In connection therewith, Defendants were required to issue invoices to support their claims for payment, and were paid in full when valid invoices were submitted.

The Project Management Services

10.	Beginning on or about September 2011 and continuing through on or about March 2012, Plaintiffs entered into a series of contracts with Defendants for the provision of the Project Management Services. More specifically, Plaintiffs desired to integrate their new software

---

[2] As noted in footnote 1, TelAmerica Media LLC purchased the rights under these agreements from TelAmerica Media Inc. entered into by TelAmerica Media Inc. prior to 2009.

program (Cross MediaWare) with a legacy software program (Conan) for use with Plaintiffs' Apex Media Sales, LLC ("Apex Media") affiliate and line of business.

11. The first of this series of contracts was entered into by the parties in New York. Defendants were represented by Joe Fabiano. At that time, Plaintiffs told Defendants that the ultimate goal was for the integration to result in a workable and demonstrable product on or before March 15, 2012. Defendants understood that the March 15, 2012 deadline was important for Plaintiffs and specifically stated and agreed that they could and would perform the Project Management Services in a manner to meet the stated goal of a workable and demonstrable product on or before March 15, 2012. Additionally, Defendants agreed to meet an interim deadline of March 1, 2012 for specific elements of the project.

12. The Project Management Services contracts ran month to month and required Defendants to hire outside programmers and to provide its own personnel as project managers working alongside the outside programmers and Plaintiffs' employees.

13. In each of these series of contracts, Plaintiffs agreed to pay Defendants (i) a flat rate of $100,000 per month for the outside programmers, (ii) an hourly rate for Defendants' personnel based on the number of hours worked multiplied by a hourly rate appropriate for the individual's skill level and (iii) the actual expenses incurred by Defendants' personnel for travel to the Apex Media facility in Arizona. For each of this series of contracts, Defendants submitted monthly invoices to Plaintiffs detailing the hourly billing and expenses and charging the flat $100,000 fee for the outside programmers.

14. Joe Fabiano, on behalf of Defendants, represented that the $100,000 flat fee for outside programmers was Defendants' cost for those services. Upon information and belief, this representation was false and Defendants made a profit on the outside programmers.

NYC:256995.1

15. The invoices for the period between the first contract for Project Management Services in October 2011 through the termination of the last contract for Project Management Services in March 2012 ranged from approximately $150,000 to over $175,000.

16. Throughout the series of contracts, Defendants expressly represented to Plaintiffs that the project was progressing in a timely and effective manner and that the goal of a workable product by March 15, 2012 would be met. At various times, Defendants requested permission to engage additional personnel, purchase additional equipment or software or have more of Plaintiffs' employees tasked to the project and those requests were routinely granted.

17. Beginning on or about January 23, 2012, Defendants, represented by Mike Miller and Joe Fabiano, reported to Plaintiffs that the project was progressing in a timely and efficient manner and that the goal of a workable and demonstrable product on March 15, 2012 would be met.

18. Defendants' misrepresentations include, but are not limited to:

    a. An October 7, 2011 email from Joe Fabiano to Plaintiffs stating that Defendants could meet Plaintiffs' timeline and goals.

    b. A February 2, 2012 email from Mike Miller to Plaintiffs requesting permission to hire additional personnel to enable Defendants to meet Plaintiffs' March 1 deadline for an element of the project. Plaintiffs approved the request.

    c. On February 13, 2012, Defendants emailed Plaintiffs a progress report that misrepresented the status of the project (by indicating the project was near completion and/or omitting that the project was not near completion) and omitted any statement that the Defendants were going to fail to meet the deadline for a workable and demonstrable product. Upon information and belief, at this time, Defendants were nowhere near

completion of the project and fully knew that they would not complete it on time or up to the standards they promised.

  d. An email on February 16, 2012 from Mike Miller to Plaintiffs acknowledging the agreed upon deadline of March 15, 2012 for project completion and omitted any statement that the deadline would not be met.

  e. A March 2, 2012 email from Mike Miller to Plaintiffs requesting additional money and extension of a March 1 deadline for certain elements of the project to March 16. Plaintiffs responded within 10 minutes, approving the additional expenditures and reminding Plaintiffs that the agreed upon deadline for a deliverable product is March 15, 2012 and asking what will be ready by that deadline. Defendants' reply omitted to state that Defendants would not meet the deadline of March 15, 2012 for a workable and demonstrable product.

19. Upon information and belief Defendants made these representations knowing they were false and that Defendants made them with the specific intent to induce Plaintiffs into renewing the month to month contracts for the Project Management Services and to ensure Plaintiffs did not terminate payment of other contracts between Plaintiffs and Defendants, including the Add-on Software.

20. Plaintiffs relied on Defendants' statements regarding the status and progress of the projected and continued to make payments to Defendants and to renew the contracts for the Project Management Services.

21. On or about March 14, 2012, Mike Miller, on behalf of Defendants, revealed that the integration project was not complete, that there was no workable or demonstrable product and that Defendants would need significantly more time and money to complete the project.

22. Plaintiffs terminated Defendants' contract for the Project Management Services effective immediately. Defendants did not dispute and have not disputed that Plaintiffs retained the right to terminate the contract for the Project Management Services immediately.

23. Even though they had not performed as required under the contracts for the Project Management Services, Defendants, subsequent to March 14, 2012, continued to demand payment and submit invoices for work allegedly performed prior to the termination of the contract for Project Management Services.

Plaintiffs Terminate All Agreements With Defendants

24. Over the course of 2012, the parties relationship deteriorated further, Defendants' services were no longer needed or wanted, and Plaintiffs terminated all agreements with Defendants.

25. In November 2012, Defendants began making litigious demands for additional monies.

26. Plaintiffs rejected Defendants' demands, denied that any money was owed, and disputed the alleged work Defendants claimed to have completed. Moreover, Defendants began making unfounded assertions and claims of ownership of Plaintiffs' proprietary software based on Defendants' work on the Add-on Software. The total amount of money Defendants seek from Plaintiffs is $242,553.39 plus interest. Defendants have concocted alleged invoices for work to support these monetary demands.

27. The disputed invoices include the following:

| Invoice # | Dated |
|---|---|
| CMW 3.19.12 | March 19, 2012 |
| CMW 3.15.12 | March 15, 2012 |
| CMW 3.30.12 | March 30, 2012 |
| 5013 | June 1, 2013 |
| 5014 | June 1, 2013 |
| 5015 | June 1, 2013 |
| 5062 | July 1, 2013 |
| 5063 | July 1, 2013 |
| 5064 | July 1, 2013 |
| 5117 | August 1, 2013 |
| 5118 | August 1, 2013 |
| 5119 | August 1, 2013 |
| 5130 | September 1, 2013 |
| 5131 | September 1, 2013 |
| 5132 | September 1, 2013 |

28. Plaintiffs dispute that they owe any additional payment for the work identified on the disputed invoices because, among other things, (i) Defendants did not perform the work identified on the invoice, (ii) Defendants failed to properly perform the work identified on the invoice, (iii) Defendants were not authorized by Plaintiffs to perform the work identified on the invoice, (iv) Defendants did not complete the work identified on the invoice, (v) the amount charged on the invoice was in excess of the amount agreed to by Plaintiff for the work identified on the invoice, and (vi) Defendants did not complete the work identified in the invoice in the time required by the Software Agreements.

### FIRST CAUSE OF ACTION
### (Declaratory Relief – against all Defendants)

29. Plaintiffs incorporate the allegations in the preceding paragraphs as if fully set forth herein.

NYC:256995.1

30. A justiciable controversy has arisen as to the amount of money owed, if any, pursuant to the Software Agreements and invoices.

31. Plaintiffs have fully performed all of their obligations under the Software Agreements and Project Management Services, including, but not limited to, payment of all valid and legitimate invoices.

32. Defendants are improperly demanding additional payment on invoices that are valid.

33. A judicial declaration of the parties' rights pursuant to 28 U.S.C. §2201 is necessary to avoid further dispute over the Software Agreements and related invoices.

34. Plaintiffs have been forced to hire an attorney to prosecute this action and therefore seeks recovery of their costs.

## SECOND CAUSE OF ACTION
### (Breach of Contract – against all Defendants)

35. Plaintiffs incorporate the allegations in the preceding paragraphs as if fully set forth herein.

36. Plaintiffs and Defendants entered into definite, certain and enforceable contracts by which Defendants provided the Project Management Services to Plaintiffs and Plaintiffs agreed to pay money to Defendants.

37. Defendants understood that time was of the essence to the adequate performance under the contracts and that timely completion by March 15, 2012 was a material term of the contracts. Defendants breached the contracts by failing to perform the contracts for Project Management Services in a timely, effective, complete and efficient manner and, as a result, Defendants breached the contracts when they did not have a workable and demonstrable product by the agreed upon deadline of March 15, 2012.

38. Plaintiffs satisfied their obligations to Defendants under the contracts for Project Management Services, or those obligations were excused.

39. As a direct and proximate result of the acts and omissions of Defendants, Plaintiffs have suffered and will continue to suffer direct, incidental and consequential damages in an amount to be proven at trial, but, in any event, in excess of $75,000, plus prejudgment interest.

40. Plaintiffs have been forced to hire an attorney to prosecute this action and therefore seeks recovery of their costs.

### THIRD CAUSE OF ACTION
**(Breach of Implied Covenant of Good Faith and Fair Dealing – against all Defendants)**

41. Plaintiffs incorporate the allegations in the preceding paragraphs as if fully set forth herein.

42. Implied in all contracts, including the contracts for the Project Management Services, is the obligation of good faith and fair dealing.

43. Defendants breached the implied covenant of good faith and fair dealing by failing to perform the contracts for Project Management Services in a timely, effective, complete and efficient manner and, as a result, Plaintiffs did not have a workable and demonstrable product by the agreed upon deadline of March 15, 2012.

44. Defendants further breached the implied covenant of good faith and fair dealing in the contracts for Project Management Services by making a profit on the flat fee that the parties intended to be the actual cost to Defendants to contract for outside programmers.

45. Plaintiffs justifiable expectations under the contracts for the Project Management Services were, thus, denied.

46.     As a direct and proximate result of the acts and omissions of Defendants, Plaintiffs have suffered and will continue to suffer direct, incidental and consequential damages in an amount to be proven at trial, but, in any event, in excess of $75,000, plus prejudgment interest.

47.     Plaintiffs have been forced to hire an attorney to prosecute this action and therefore seeks recovery of their costs.

## FOURTH CAUSE OF ACTION
### (Fraud In The Inducement – against all Defendants)

48.     Plaintiffs incorporate the allegations in the preceding paragraphs as if fully set forth herein.

49.     Defendants made knowingly false statements to Plaintiffs regarding the ability and intention to provide a workable and demonstrable product by the March 15, 2012 deadline. Specifically, Defendants expressly informed Plaintiffs that they would provide a workable and demonstrable product by that deadline even though they knew they could not. Defendants false statements include, but are not limited to, the statements detailed in Paragraph 19 above.

50.     Defendants made these knowing and materially false statements with the purpose of inducing Plaintiffs to continue to contract with Defendants regarding the Add-On Software and the Project Management Services.

51.     Plaintiffs had no way of determining that Defendants were misrepresenting their abilities and intentions to provide the workable and demonstrable product by the March 15, 2012 deadline, and thus were justified in relying on the misrepresentations.

52.     Plaintiffs reliance on the misrepresentations regarding Defendants' abilities and intentions to complete the work was thus reasonable.

NYC:256995.1

53. As a direct and proximate result of the acts and omissions of Defendants, and Plaintiffs' justified and reasonable reliance thereupon, Plaintiffs have suffered and will continue to suffer direct, incidental consequential and punitive damages in an amount to be proven at trial, but, in any event, in excess of $75,000, plus prejudgment interest.

54. Plaintiffs have been forced to hire an attorney to prosecute this action and therefore seeks recovery of their attorney's fees and court costs.

WHEREFORE Plaintiffs prays for relief as follows:

1. A declaration that they owe no further obligation to Defendants.
2. Damages, and punitive damages from Defendants' fraud;
3. Direct, incidental and consequential damages in an amount to be proven at trial;
4. Pre and post-judgment interest;
5. For an award of attorney's fees and costs; and
6. For any additional relief this Court deems just and proper.

## JURY TRIAL DEMAND

Plaintiffs hereby demand a jury trial for all issues so triable as of right.

Dated: January 29, 2014

Respectfully submitted,

Andrews Kurth LLP
450 Lexington Avenue
New York, New York 10010
(212) 850-2881

By: _____
Paul D. Ackerman
paulackerman@andrewskurth.com

Of Counsel
Evan M. Rothstein
Brownstein Hyatt Farber Schreck, LLP
410 Seventeenth Street, Suite 2200
Denver, Colorado 80202-4432
(303) 223-1100

*Attorneys for Plaintiffs Cross MediaWorks, LLC and TelAmerica Media, LLC.*